### Goldstein v. Goldstein

216

*Alan B. Portnoff,* for plaintiff.
*Henry L. Menin,* for defendant.

MARRONE, J., May 4, 1973.—In this action in equity, plaintiff seeks to enforce a separation agreement entered into on September 26, 1968, between her and defendant, who was then her husband. She avers that, pursuant to that agreement, defendant is required to pay certain sums based upon his adjusted gross income for the last preceding year and that he is also obligated to employ Alexander Grant & Company (successor to D. H. Shapiro & Co.), certified public accountants, to audit his books and prepare

his Federal income tax returns. Plaintiff claims that defendant has breached those obligations in that he has failed to permit the said accountants to audit his books or to prepare his Federal income tax returns or to pay sums properly due from defendant to plaintiff for the years 1970 and thereafter. It is further averred that defendant has improperly diverted income from himself to his present wife and that he has formed a professional corporation also to evade his obligations under the aforesaid agreement.

The facts in this case, as established by admissions in the pleadings as well as testimony presented, are substantially as set forth in plaintiff's proposed findings of fact. The parties, husband and wife at the time, entered into an agreement on September 26, 1968, which agreement was still in existence at the time of the filing of the complaint. The dispute arises primarily because the agreement provides for support payments as follows:

"*Support:* A. Husband shall pay to Wife on the first day of each month from the effective date of the agreement, as support for the minor children and permanent alimony to Wife that sum of money on a monthly basis, that is equal to the larger of (a) thirty-five percent (35%) of Husband's 'Adjusted Gross Income' for the last preceding calendar year as such phrase is now defined by the Internal Revenue Code of 1954 as amended: or (b) Seven Hundred Dollars a month ($700.00). Adjusted Gross Income shall exclude earnings of any future wife of Husband. Any increase or decrease of such income from one year to the next year shall be reflected by payments commencing on May 1, of the year after the year of the change."

There then follows a provision that the sums payable shall be apportioned 70 percent to the son or sons of the parties and 30 percent thereof to wife. There are

further provisions which are not relevant to the instant inquiry except for that requiring defendant to employ the accounting firm hereinabove mentioned.

When the agreement was executed, defendant was a resident in Otolaryngology at Temple University Hospital earning substantially less than $24,000 a year. In the years 1968 and 1969 defendant paid plaintiff the sum of $700 per month under the terms of the separation agreement.

In 1970, pursuant to the provisions of the Professional Corporation Law of July 9, 1970, P. L. 461 (no. 160), 15 PS §2901, et seq., defendant formed a professional corporation presently known as Valley Forge Ear, Nose and Throat Associates, Inc. and in that year paid the sum of $8,400 to plaintiff. In the year 1971, defendant received a salary of $32,000 from the professional corporation and has paid plaintiff 35 percent of that sum. In the year 1972, defendant's salary was $36,000.

The corporation employs two doctors, one of which is defendant, a nurse and two typists as receptionists. As is generally the case, the corporation has adopted a pension plan which includes all its employes, into which the corporation has contributed a sum equal to 12 percent of defendant's salary for the fiscal years 1971 and 1972.

At all times pertinent to this discussion, defendant has been the sole owner of all of the issued and outstanding stock of the professional corporation.

Plaintiff's theory is that while the agreement called for support payments to be made based on defendant's "adjusted gross income" as defined in the Internal Revenue Code of 1954, his incorporating, while not illegal per se, was done to avoid his obligations under the agreement. Thus, the term "his books" as used in the agreement, particularly in paragraph 4(c), includes

the books and financial records of the aforementioned professional corporation, as well as the individual books and financial records of defendant. While defendant has agreed to permit Alexander Grant & Company to audit his personal records for the years in question and to pay for that audit, he has refused to permit that firm to audit the books of the corporation except at the expense of plaintiff, thereby, according to plaintiff, breaching the agreement in that respect.

The issue, as this court views it, is whether defendant's engaging in the practice of medicine as an employe of a professional corporation, the stock of which is entirely owned by him, violates his obligations under the contract with his former spouse in that it lowers his adjusted gross income.

Plaintiff argues that, as a matter of law, defendant's professional corporation is subject to audit by the designated accountants pursuant to the separation agreement. With this, we disagree. The contract as written is neither ambiguous nor of doubtful meaning. As a matter of fact, in paragraph 4(a) express reference is made to the basis for payments to be made by defendant, i.e., 35 percent "of husband's adjusted gross income for the last preceding calendar year as such phrase is now defined by the Internal Revenue Code of 1954, as amended." In a subsequent section, the contract sets forth that "wife agrees to accept the 'adjusted gross income' figure prepared by said accountants and as defined in the Internal Revenue Code of 1954, as amended, and as used on line 9 of the 1967 Federal Income Tax Return, as the basis for monthly payments provided for in paragraph 4(a) above." Obviously, much care was taken in defining precisely how the figures of support were to be arrived at. There was express reference to the Internal Revenue Code. The words "his books" cannot reasonably

be construed to include corporate records of a corporation not even in existence at the time. As stated in Fischer & Porter Co. v. Porter, 364 Pa. 495 (1950), citing the Restatement, Contracts, §235(b): " 'Technical terms and words of art are [to be] given their technical meaning unless the context or usage which is applicable indicates a different meaning.' "

Also on point is J. M. Davis Company v. Shaler Township, 332 Pa. 134 (1938), cited in Fischer, wherein it was stated that: "[T]he terms of a contract requiring the application of a statute are to be construed according to their meaning as used in the statute."

Interestingly enough, the Fischer case involved a dispute over what constituted "refunds" under the provisions of the Internal Revenue Code. Here, great stress was laid on the term "adjusted gross income" as defined in the Internal Revenue Code. Not only was the term referred to as such, but reference was made even to the line on which that figure was to appear on the income tax returns.

Plaintiff argues further that professional corporations were not permitted in Pennsylvania at the time the contract was made and defendant's use of that vehicle defeats plaintiff's rights under the contract. However, nowhere in the agreement is there any stipulation that defendant not remove himself from practicing medicine in this State to some other State where such corporations were countenanced at that time. Nor is there any provision in the agreement which obligates defendant to continue practicing medicine at all or in some other fashion other than as an individual practitioner. Other aspects of the contract lead the court to the conclusion that it was prepared with a fairly-complete knowledge of the impact of Federal income taxes. For example, there was a provi-

sion that required defendant to make a "gift" to wife in the event she was required to pay tax to any governmental authority on the sums received by her for the benefit of their children, in an amount equivalent to such tax or taxes. Defendant testified that he argued for use of the term "net taxable income" on which to base the payments but to no avail. Obviously, plaintiff insisted on "adjusted gross income."

Plaintiff states as authority for the proposition that contributions made by the professional corporation to the pension or profit-sharing plan in the amount of 12 percent of defendant's income for the benefit of defendant be included in his "adjusted gross income," the case of Commonwealth ex rel. DiSanti v. DiSanti, 221 Pa. Superior Ct. 435 (1972). That case involved a question of whether in a support action amounts paid into a profit-sharing account of the husband by his law firm, which was organized as a professional corporation, should be included as usable income available. We find no argument with that holding. However, that case is inapplicable, since the instant case is founded on a contract and not on an action for support. We note parenthetically that 70 percent of the support payments required under the terms of the contract are allocated for the benefit of the children of defendant. There is no doubt that should an action in support be instituted for the support of those children, the amounts paid into the pension plan, under the holding in DiSanti, supra, would be considered by a trial court in ascertaining the amount of the order. In the matter before us, however, we must look to the terms of the contract and not to the earning power of defendant.

As a general rule, laws which were in force at the time and place of the making of the contract may be considered with the same effect as if expressly incor-

porated therein. Here, the Federal income tax provisions were expressly incorporated into the agreement. For this court to hold that "adjusted gross income" means other than what the Internal Revenue Code says it means would be to rewrite that portion of the contract, something which the court may not do.

It is also averred and argued that payments made to defendant's new wife by the corporation have been made for purposes of reducing his adjusted gross income. Nothing in the record convinces this court that that is the case. Defendant described his wife's professional background as well as her duties as an employe of the association. He described her training which qualifies her to perform special tasks involving the balance system. Her background as an operating room nurse at Temple University Hospital and as a clinical instructor in her special training in audiology, together with testimony as to her earnings prior to her being employed by the corporation, leads this court to conclude that payments made to her were not made for the purpose of avoiding his obligations under the contract. Nothing in the contract forbids his employing her in any capacity and the contract expressly excludes her earnings from the basis for support payments.

## CONCLUSIONS OF LAW

1. The professional corporation formed by defendant is a proper and legal corporation under the laws of the Commonwealth of Pennsylvania.

2. Plaintiff has not proven that defendant formed the said corporation to evade his obligations under the separation agreement.

3. Plaintiff has failed to meet the burden of proving that the income of defendant was improperly diverted to defendant's present wife.

4. The term "adjusted gross income" as defined in the Internal Revenue Code does not include payments such as those made by the corporation for the benefit of defendant into its pension and profit-sharing plans.

5. Defendant has complied with the terms of the separation agreement of 1968 regarding payment of support and the computations of that sum.

6. Plaintiff is not entitled to equitable relief.

The following shall be entered as a decree nisi to become the final decree of this court unless exceptions are filed thereto, sec. leg.

## DECREE NISI

And now, May 4, 1973, plaintiff's request for a mandatory order against defendant is refused. Judgment is entered in favor of defendant and against plaintiff. Each party shall pay his costs.